CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

AUG 1 2 2005

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

United States of America

v.

Michael David Bear

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:05mj00048

I, Ryan Kaye, being duly sworn state the following is true and correct to the best of my knowledge and belief. On October 28, 2004, in Lee County, in the Western District of Virginia, defendant(s):

Did possess firearms after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of Title 18, United States Code (USC), Section 922(g)(1); did possess a firearm during and in relation to a drug trafficking crime, in violation of Title 18, USC, Section 924(c); and did conspire with one or more persons to possess a controlled substance with intent to distribute, in violation of Title 21, USC, Sections 841(b)(1)(A) and 846.

Continued on the attached sheet and made a part hereof.   ■ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me, and subscribed in my presence,

August 12, 2005   at   Abingdon, Virginia
Date                     City and State

Pamela Meade Sargent USMJ              _____
Name and Title of Judicial Officer         Signature of Judicial Officer

## AFFIDAVIT FOR ARREST WARRANT

1. I, Special Agent Ryan S. Kaye, being duly sworn hereby depose and say:

2. I have been employed as a Special Agent (S/A) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for approximately three (3) years. As a Special Agent with ATF my duties include, but are not limited to, conducting criminal investigations concerning violations of the Federal Firearms Laws.

3. As a result of my personal participation in the investigation of matters referred to in this affidavit, I am familiar with the facts and circumstances of this investigation. On the basis of personal observation, as well as familiarity, I have determined the following:

4. On October 28, 2004, Michael David Bear was stopped by the Lee County Sheriff's Office (LCSO) [handwritten: on Highway 58A, in Dryden, VA. ✓ pms] for a missing taillight. After receiving consent from Bear to search his vehicle, LCSO deputies found two (2) loaded firearms, over $7,000 in cash, a small quantity of suspected cocaine and digital scales. ATF Task Force Officer (TFO) and LCSO Investigator Robert Combs arrived on the scene and field-tested the suspected cocaine, which came up positive for cocaine. Bear was arrested and taken to the LCSO where he was Mirandized, waived his rights and made statements to LCSO investigators.

5. During his interview with LCSO investigators, Bear stated that the cocaine found in his car belonged a friend who borrowed his car while he was in West Virginia, the cash was for a car he was going to purchase but did not, and the scales were for reloading ammunition. Bear was then placed in the LCSO jail.

6. On October 29, 2004, ATF S/A Ryan Kaye traveled to the LCSO for the purpose of interviewing Bear, who had not yet seen a judge or been appointed an attorney. S/A Kaye Mirandized Bear in the presence of TFO Combs, Bear waived his rights, and gave a full confession regarding the night he was stopped and his prior narcotics trafficking activities.

7. Bear stated that he started selling cocaine for an individual who will remain nameless in this affidavit around August 2002 in Tazewell, TN. Bear also sold marijuana for this individual, as well as allowed his residence to serve as storage for large quantities of this individual's marijuana. This relationship went on for approximately one (1) year. During this time, Bear sold approximately one (1) ounce of cocaine and three (3) pounds of marijuana per week. Bear stated that his relationship with this individual went sour when this individual owed him a large quantity of money and he (Bear) was never paid.

8. BEAR stated that after his relationship with this individual, he was introduced to a man who owned a pizza restaurant in Wilson, KY. Bear stated this restaurant owner became a source of cocaine for him (Bear) and that he made numerous trips to

1

## AFFIDAVIT FOR ARREST WARRANT

purchase cocaine from him at his restaurant. Bear only knew the owner of the restaurant as the "Pizza Guy."

9. Bear stated that he has been buying cocaine from the Pizza Guy for approximately six (6) months; approximately one (1) ounce per week. Bear stated that the $7,000 he had with him the night he was arrested by the LCSO was going to purchase five (5) ounces of cocaine, but the quality was too poor and he decided not to buy. Bear stated that he only sells cocaine to make extra money and that when he purchases larger quantities of cocaine it is so that he does not have to make the long trip from TN to KY as often. Bear added that the digital scales found in his car were not only for reloading ammunition but also for weighing cocaine for purchase and resale.

10. Regarding the two (2) firearms found on Bear when arrested, Bear stated that the .22 caliber pistol belongs to his wife but that he always carries that firearm when he travels to purchase cocaine. The other firearm, the .25 caliber pistol, he obtained in a trade for cocaine from a buyer he sells cocaine to in TN. ATF TFO Combs test-fired these weapons, both of which were found to be in operable condition.

11. Both firearms were examined by ATF S/A Larry Hall, an interstate/foreign nexus expert regarding firearms and ammunition. S/A Hall determined that both firearms listed in paragraph 10 had previously traveled in foreign or interstate commerce to the Commonwealth of Virginia.

12. Bear stated that while living in Michigan, he had his name legally changed from Ronald Ray Effner to Michael David Bear. The Effner name appears in Bear's National Criminal Information Center (NCIC) criminal history, however no felony convictions appear when Bear had his original name of Effner. Bear also stated that he thought a previous attorney of his had his record expunged, however no indication of this could be found. Two (2) counties, Delta and Kent, in Michigan were contacted to obtain certified copies of Bear's felony convictions. Both of those certified copies of conviction have been received.

13. Also requested from Delta and Kent counties were a query of their respective Gun Boards to determine if Bear had applied for or received a restoration of his firearms rights. Joni Poisson, of the Kent County Clerk's Office, replied immediately, stating there was no record of ever applying for or receiving a restoration of his firearms rights. Delta County stated they would reply to the clemency check in writing with the conviction papers. That response was received from Delta County, MI, stating they had no record of a restoration of firearms rights for Bear.

14. On November 3, 2004, S/A Kaye received an e-mail reply from Stephanie Forbes of the ATF Firearms Trafficking Branch at ATF Headquarters. This correspondence was in response to a clemency check initiated by S/A Kaye regarding Bear's firearms rights as they applied to ATF records. After a diligent search of ATF records, Forbes indicated that Bear had neither applied for nor received a restoration of his firearms rights through ATF.

2

## AFFIDAVIT FOR ARREST WARRANT

15. On May 24, 2005, ATF Fingerprint Specialist Victor Dove concluded that fingerprints from Bear's felony arrest on 11/06/84 are one and the same as those taken from Bear while held in the LCSO jail in 2005. The fingerprints from Bear's felony arrest were obtained from the FBI and are directly related to his felony possession of cocaine conviction in Michigan, on July 1, 1985.

August 12, 2005
Date

Ryan S. Kaye
Special Agent / ATF

Subscribed and sworn to before, this the ____ day of Aug, 2005 at Abingdon, Virginia

United States Magistrate Judge
Pamela Meade Sargent

3